114 Cal.Rptr.2d 89 (2001)
94 Cal.App.4th 33
In re JOHN Z., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
John Z., Defendant and Appellant.
No. C036210.
Court of Appeal, Third District.
November 30, 2001.
Review Granted February 20, 2002.
*90 Carol L. Foster, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, Michael J. Weinberger, Supervising Deputy Attorney General, John G. McLean, Supervising Deputy Attorney General, for Plaintiff and Respondent.
SIMS, J.
In People v. Vela (1985) 172 Cal.App.3d 237, 218 Cal.Rptr. 161 (Vela), the Fifth District held that the crime of forcible rape (Pen.Code, § 261, subd. (a)(2)) is not committed where a woman consents to initial penetration by the male but the woman withdraws consent during intercourse and the male continues intercourse against the woman's will.[1] (Id. at p. 243, 218 Cal.Rptr. 161.)
In People v. Roundtree (2000) 77 Cal. App.4th 846, 91 Cal.Rptr.2d 921, Division Four of the First District concluded that Vela was wrongly decided and that the crime of forcible rape could be committed in the circumstances described above. (Id. at p. 851, 91 Cal.Rptr.2d 921.)
In this case, for reasons that follow, we agree with Roundtree.
Following a contested jurisdictional hearing on a unitary petition (Welf. & Inst.Code, §§ 602, 777, subd. (a)) filed on behalf of John Z. (the minor),[2] the juvenile court found he committed forcible rape (Pen.Code, § 261, subd. (a)(2)count II) and that his previous disposition had been ineffective (count IV).[3] (Further statutory references are to the Penal Code.) He was committed to Crystal Creek Boys Ranch.
On appeal, the minor contends the evidence is insufficient to sustain the finding that he committed forcible rape, hence, reversal of counts II and IV is required. We disagree.

*91 FACTS
During the afternoon of March 23, 2000, 17-year-old Laura T. was working at Safeway when she received a call from Juan G., whom she had met about two weeks earlier. Juan wanted Laura to take him to a party at the minor's home and then return about 8:30 p.m. to pick him up. Laura agreed to take Juan to the party, but since she planned to attend a church group meeting that evening she told him she would be unable to pick him up.
Sometime after 6:00 p.m., Laura drove Juan to the minor's residence. The minor and Justin L. were present. After arranging to have Justin L.'s stepbrother, P. W., buy them alcohol, Laura picked up P.W. and drove him to the store where he bought beer. Laura told Juan she would stay until 8:00 or 8:30 p.m. Although the minor and Juan drank the beer, Laura did not.
During the evening, Laura and Juan went into the minor's parents' bedroom. Juan indicated he wanted to have sex but Laura told him she was not ready for that kind of activity. Juan became upset and went into the bathroom. Laura left the bedroom and the minor and Justin asked her why she "wouldn't do stuff." Laura told them that she was not ready.
About 8:10 p.m., Laura was ready to leave when the minor asked her to come into his bedroom to talk. She complied. The minor told her that Juan had said he did not care for her; the minor then suggested that Laura become his girlfriend. Juan entered the bedroom and the minor left to take a phone call.
When the minor returned to the bedroom he and Juan asked Laura if it was her fantasy to have two guys, and Laura said it was not. Juan and the minor began kissing Laura and removing her clothes, although she kept telling them not to. At some point, the boys removed Laura's pants and underwear and began "fingering" her, "playing with [her] boobs" and continued to kiss her. Laura enjoyed this activity in the beginning, but objected when Juan removed his pants and told the minor to keep fingering her while he put on a condom. Once the condom was in place, the minor left the room and Juan got on top of Laura. She tried to resist and told him she did not want to have intercourse, but he was too strong and forced his penis in her vagina. The rape terminated when, due to Laura's struggling, the condom fell off. Laura told Juan that "maybe it's a sign we shouldn't be doing this," and he said "fine" and left the room.
Laura rolled over on the bed and began trying to find her clothes; however, because the room was dark she was unable to do so. The minor, who had removed his clothing, then entered the bedroom and walked to where Laura was sitting on the bed and "he like rolled over [her] so [she] was pushed back down to the bed." Laura did not say anything and the minor began kissing her and telling her that she had "a really beautiful body." The minor got on top of Laura, put his penis in her vagina "and rolled [her] over so [she] was sitting on top of him." Laura testified she "kept ... pulling up, trying to sit up to get it out ... [a]nd he grabbed my hips and pushed me back down and then he rolled me back over so I was on my back ... and ... kept saying, `will you be my girlfriend.'" Laura "kept like trying to pull away" and told him that "if he really did care about me, he wouldn't be doing this to me and if he did want a relationship, he should wait and respect that I don't want to do this." After about 10 minutes, the minor got off of Laura, helped her dress and find her keys. She then drove home.
*92 On cross-examination, Laura testified that when the minor entered the room unclothed, he lay on the bed behind her and touched her shoulder with just enough pressure to make her move, a nudge. He asked her to lie down and she did. He began kissing her and she kissed him back. He rolled on top of her, inserted his penis in her and, although she resisted, he rolled her back over pulling her on top of him. She was on top of him for four or five minutes, during which time she tried to get off but he grabbed her waist and pulled her back down. He rolled her over and continued the sexual intercourse. Laura told him that she needed to go home but he would not stop. He said, "[J]ust give me a minute," and she said, "[N]o, I need to get home." He replied, "[G]ive me some time" and she repeated, "[N]o, I have to go home." The minor did not stop, "[h]e just stayed inside of me and kept like basically forcing it on me." After about a "minute, minute and [a] half," the minor got off of Laura.
The minor testified, admitting that he and Juan were kissing and fondling Laura in the bedroom, but claimed it was with her consent. He also admitted having sexual intercourse with Laura, again claiming it was consensual. He discontinued the sex when Laura told him that she had to go home "`now.'"

DISCUSSION
In support of his contention that the evidence is insufficient to support the finding he committed forcible rape, the minor, relying primarily on Laura's cross-examination testimony, argues "[t]he evidence does not demonstrate that [he] used any force substantially different from or substantially greater than that necessary to accomplish the act of sexual intercourse itself." Defendant then relies on the holding in People v. Vela, supra, 172 Cal. App.3d 237, 218 Cal.Rptr. 161, that where the female consents to intercourse at the time of penetration but thereafter withdraws her consent any use of force by the male past that point is not rape. (Id. at pp. 239, 243-244, 218 Cal.Rptr. 161.) The minor then claims that "[a]t best, the evidence demonstrates that Laura consented to sexual intercourse with [him] and then withdrew her consent after he [had] penetrated her."
Like the court in People v. Roundtree, supra, 77 Cal.App.4th 846, 91 Cal.Rptr.2d 921, we conclude that People v. Vela, supra, was wrongly decided; consequently, we shall affirm the juvenile court's findings.
The reasoning underlying the Vela court's holding that consent at the time of penetration precludes a finding of rape if the female thereafter withdraws her consent is the following: "[T]he essence of the crime of rape is the outrage to the person and feelings of the female resulting from nonconsensual violation of her womanhood. When a female willingly consents to an act of sexual intercourse, the penetration by the male cannot constitute a violation of her womanhood nor cause outrage to her person and feelings. If she withdraws consent during the act of sexual intercourse and the male forcibly continues the act without interruption, the female may certainly feel outrage because of the force applied or because the male ignores her wishes, but the sense of outrage to her person and feelings could hardly be of the same magnitude as that resulting from an initial nonconsensual violation of her womanhood. It would seem, therefore, that the essential guilt of rape as stated in ... section 263 is lacking in the withdrawn *93 consent scenario."[4] (People v. Vela, supra, 172 Cal.App.3d 237, 243, 218 Cal.Rptr. 161.)
The Vela court's reasoning is not sound. Section 261, subdivision (a)(2) defines rape as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator .... [¶] ... [¶][w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person." Nothing in section 261 conditions the act of rape on "outrage" of the victim. In other words, while outrage of the victim may be the cause for criminalizing and severely punishing forcible rape, outrage by the victim is not an element of forcible rape. Pursuant to section 261, subdivision (a)(2) forcible rape occurs when the act of sexual intercourse is accomplished against the will of the victim by force or threat of bodily injury, and it is immaterial at what point the victim withdraws her consent, so long as that withdrawal is communicated to the male and he thereafter ignores it. (People v. Roundtree, supra, 77 Cal. App.4th at pp. 851-852, 91 Cal.Rptr.2d 921 [finding the reasoning of Vela unsound and concluding that where the victim is forced to continue sexual intercourse after she withdraws consent, the crime of rape is committed].)
In the present case, even assuming the proposition that Laura's conduct was so equivocal that it could have been construed by the minor as consent when he initiated sexual intercourse with her, there is substantial evidence that she withdrew her consent and clearly communicated that fact to the minor. Laura testified she repeatedly tried to push the minor off of her, and when she told him that she needed to go home he said "[J]ust give me a minute." She replied, "[N]o, I need to get home;" however, he continued to force sexual intercourse upon her for at least another minute to a minute and a half. Given this testimony by Laura, credited by the court, there was nothing equivocal about her withdrawal of any initially assumed consent.

DISPOSITION
The judgment (order) is affirmed.
We concur: SCOTLAND, P.J., and NICHOLSON, J.
NOTES
[1] Although Penal Code section 261, defining the various circumstances under which rape occurs, has frequently been amended since the decision in Vela, the differences are immaterial for our purposes.
[2] Juan G. was originally a codefendant, however, at the close of the victim's testimony Juan admitted amended charges of sexual battery (Pen.Code, § 243.4) and unlawful sexual intercourse (Pen.Code, § 261.5, subd. (b)), a misdemeanor.
[3] Count IV was based upon the minor's committing the rape charged in count II. Counts I (violation of Pen.Code, § 264.1) and III (violation of Pen.Code, § 289) were not sustained.
[4] Section 263 states: "The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape. Any sexual